IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MEDFORD DIVISION

TINA BOOK,                                                    Civ. No. 1:12-cv-00404-CL

               Plaintiff,

                                                   FINDINGS OF FACT &
                                                   CONCLUSIONS OF LAW

               v.

JUDY HUNTER, RANDALL HUNTER, and
HUNTER CREST PROPERTIES, LLC.,

               Defendants.

_____

CLARKE, Magistrate Judge.

     On March 5, 2013, the court held a bench trial and took this case under advisement. The

following are my findings of fact and conclusions of law. Fed. R. Civ. Pro. 52(a)(1).

## FACTUAL FINDINGS

     Plaintiff Tina Book considers herself disabled since 2006 when she was diagnosed with

breast cancer. She currently suffers from anxiety, depression, fibromyalgia, and other related

issues. She lives with and is generally accompanied by an emotional assistance dog, named

Athena. Although Athena was originally Ms. Book's pet, Book has considered Athena a service

animal for several years. She has doctors' notes dating back to 2010 identifying Athena as an

emotional companion animal that assists her with the functional limitations relating to "a medical condition that substantially limits one or more of her major life activities." Ex. 1, 2.

At the beginning of 2011 Book began searching for a new place to live. She had been living in an apartment for almost a year, but felt that the neighborhood was unsafe. She saw a for-rent sign on the defendants' property, and obtained an application. After she submitted the rental application on March 12, 2011, the defendants approved her to rent their property, subject to verification of her income. Ex. 5.

Ms. Book met with Ms. Hunter to see the unit, and they discussed the finalization of her application to rent, which included a move-in date as well as the rent and deposit due. Book testified that the Hunters preferred her to move in on March 21, but Book explained that she was unable to move in until April due to financial concerns as well as her schedule. She had a group trip planned during Spring Break, and her friends would not be available to help her move until April 1. Ms. Hunter told her that "they don't hold apartments." However, at the time of the conversation, the prorated rent for the month of March was about $220, and Ms. Hunter offered to split that amount with Ms. Book so that she would be able to rent the unit immediately. Even though Ms. Book would be unable to physically move into the unit until April, she understood this arrangement to solve the issue of "holding the apartment" because she would take the keys when she paid the $110 – or half of the prorated rent.

Ms. Book testified that she arranged with Ms. Hunter to pay either the first full month's rent or the security deposit on April 3, the date she was to receive her disability check, and then she would pay the balance when she received her financial aid check. Book used her computer to show Ms. Hunter the accounts, verifying her disability and financial aid payments. Ms. Hunter wrote on the application that she verified this income. Ex. 5.

Ms. Book testified that it was after these arrangements were made that she handed Ms. Hunter the note from her doctor identifying Ms. Book's need for a companion animal to assist her.  Book testified that Ms. Hunter was upset by this, and told her that they "do not allow pets." Mrs. Hunter asked the name of her doctor, and then Ms. Book saw Ms. Hunter write on Ms. Book's rental application, "Denial Due to Pet and Svc Dog – Dr. Miller." See Ex. 5.  Ms. Book testified that she was standing next to Ms. Hunter, and Ms. Hunter did not write "03/21/2011 Due To No Deposit" at that time. See Ex. 5.

When Ms. Book received the rental application denial, she understood it to mean that she was being denied due to her service dog.  The form indicated that the reasons for the denial included, "Inaccurate or false information supplied by applicant,"[1] and, "Undisclosed or unpermitted pet." Ex. 4.  In her testimony, Ms. Book pointed out that there are places on the form to indicate "insufficient income" and other possible reasons for a denial of an application, but these boxes were not marked by the defendants as relevant to her situation.  See Ex. 4. According to her, she was denied based on the fact that she did not disclose her need for a service animal on her application.  She testified that she did not believe she was required to disclose this because the application form only asked about "pets," and Book does not consider Athena a "pet," but rather, a service animal.

The court finds Ms. Book's testimony credible.  In addition, parts of Ms. Hunter's testimony support Ms. Book's claim.  She confirmed that Ms. Book's rental application was preliminarily approved, subject to income verification.  She admitted that she did verify Ms. Book's income and made a note to that effect on the application.  She also confirmed that Ms.

---

[1] Defendants offered testimony regarding whether or not Ms. Book was truthful about her previous rental history on her application based on her omission of prior evictions.  However, the plaintiff responded to this testimony, explaining why that information was omitted.  Additionally, the court finds this dispute to be irrelevant to the issue of whether defendants violated the FHA, due to the fact that the discrepancy was not known until after her application was denied.  Thus, the court will not make a finding regarding that evidence.

Book never said anything, in her application or in person, about needing a service animal until

she handed Ms. Hunter the note from the doctor.  Ms. Hunter and her husband, Mr. Hunter, both

testified that the dog was at least one reason for the denial of Ms. Book's rental application.

Testimony by both defendants made it clear that they were unaware that Ms. Book had a dog,

and that they would have preferred her to include that information on her application.  Ms.

Hunter admitted that Ms. Book handed her a note from her doctor and that she subsequently

wrote, "Denial Due to Svc Dog – Dr. Miller" at the top of the application.

## CONCLUSIONS OF LAW

Under the Fair Housing Act (FHA) it is unlawful to "discriminate in the sale or rental, or

to otherwise make unavailable or deny, a dwelling to any buyer or renter because of a handicap

of that buyer or renter." 42 U.S.C. § 3604(f)(1)(A).  Discrimination includes "a refusal to make

reasonable accommodations in rules, policies, practices, or services, when such accommodations

may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42

U.S.C. § 3604(f)(3)(B).  "Handicap" means, with respect to a person, "(1) a physical or mental

impairment which substantially limits one or more of such person's major life activities, (2) a

record of having such an impairment, or (3) being regarded as having such an impairment."  42

U.S.C. § 3602(h).

*A.  Discrimination based on a refusal to grant reasonable accommodation*

To establish a prima facie case under the FHA, plaintiff is required to show that (1)

plaintiff suffers from a handicap as defined in 42 U.S.C. § 3602(h); (2) defendants knew of

plaintiff's handicap or should reasonably be expected to know of it; (3) accommodations of the

handicap "may be necessary" to afford plaintiff an equal opportunity to use and enjoy the

dwelling; and (4) defendants refused to make such accommodation.  Green v. Housing Authority

of Clackamas Ctny, 994 F.Supp. 1253, 1255 (D. Or. 1998) (citing U.S. v. California Mobile

Home Mgmt. Co., 107 F.3d 1374, 1380 (9th Cir. 1997).

The Department of Justice (DOJ) and the Department of Housing and Urban

Development (HUD) are jointly responsible for enforcing the FHA; they issued a joint statement

on May 17, 2004 titled *Reasonable Accommodations under the Fair Housing Act.* The statement

explains in more detail what is required of housing providers to comply with the FHA. For

instance, it specifies that a person with a "physical or mental impairment" as defined by the FHA

"includes but is not limited to, such diseases as . . . cancer . . . [and] emotional illness." Joint

Statement, 3. "The term 'substantially limits' suggests that the limitation is 'significant' or 'to a

large degree'" and "the term 'major life activity' means those activities that are of central

importance to daily life, such as seeing, hearing, walking breathing, performing manual tasks,

caring for one's self, learning, and speaking." Joint Statement, 4.

The FHA does not protect an individual with a disability whose tenancy would constitute

a "direct threat" to the health or safety of other individuals or result in substantial physical

damage to the property of others unless the threat can be eliminated or significantly reduced by

reasonable accommodation. Joint Statement, 4. A determination that an individual poses a

direct threat must rely on an individualized assessment that is based on reliable, objective

evidence, considering (1) the nature, duration, and severity of the risk of injury, (2) the

probability that injury will actually occur, and (3) whether there are any reasonable

accommodations that will eliminate the direct threat. Joint Statement, 4.

A "reasonable accommodation" is a change, exception, or adjustment to a rule, policy,

practice, or service that may be necessary for a person with a disability to have an equal

opportunity to use and enjoy a dwelling. Joint Statement, 6. To show that a requested

accommodation may be necessary, there must be an identifiable relationship, or nexus, between the requested accommodation and the individual's disability.  Joint Statement, 6.  For instance, if a housing provider has a "no pets" policy, but a tenant who is deaf requests an exception to this policy because his dog is an assistance animal that alerts him to sounds such as knocks on the door and the sounding of the smoke detector, the housing provider must make an exception to its "no pets" policy to accommodate this tenant.  Joint Statement 6-7.

A housing provider can deny a request for a reasonable accommodation if the request was not made by or on behalf of the person with a disability, or if there is no disability-related need for the accommodation, or if providing the accommodation is not reasonable.  Joint Statement, 7. However, when a housing provider refuses a requested accommodation because it is not reasonable, the provider should discuss with the requester whether there is an alternative accommodation that would effectively address the requester's disability-related needs.  Joint Statement, 7.  The statement suggests that this should be an interactive process between the housing provider and the tenant, however, "providers should be aware that persons with disabilities typically have the most accurate knowledge about the functional limitations posed by their disability, and an individual is not obligated to accept an alternative accommodation suggested by the provider if the she believes it will not meet her needs and her preferred accommodation is reasonable.  Joint Statement, 8.  "A failure to reach an agreement on an accommodation is in effect a decision be the provider not to grant the requested accommodation," which subjects the provider to a review of that decision if the individual files an FHA complaint.  Joint Statement 9.

Under the FHA, a resident or an applicant for housing makes a reasonable accommodation request whenever she makes clear to the housing provider that she is requesting

an exception, change, or adjustment to a rule, policy, practice, or service because of her disability. Joint Statement, 10. She should explain what type of accommodation she is requesting, and, if the need for the accommodation is not readily apparent or not known to the provider, explain the relationship between the requested accommodation and her disability. Joint Statement, 10. The FHA "does not require that a request be made in a particular manner or at a particular time." Joint Statement, 10. Housing providers "must give appropriate consideration to reasonable accommodation requests even if the requester makes the request orally or does not use the provider's preferred forms or procedures." Joint Statement, 10.

A housing provider may not ordinarily inquire as to the nature and severity of an individual's disability. Joint Statement, 13. However, in response to a request for reasonable accommodation, a housing provider may request reliable disability-related information that is (1) necessary to verify that the person meets the FHA's definition of disability, (2) describes the needed accommodation, and (3) shows the relationship between the disability and the accommodation. Joint Statement, 13. This information can usually be provided by the individual herself or by a doctor, medical professional, or a reliable third party who is in a position to know about the individual's disability. Joint Statement, 13-14. In most cases, an individual's medical records or detailed information about the nature of the disability is not necessary for this inquiry. Joint Statement, 14.

Based on the testimony and the evidence at trial, the court finds that the defendants violated the FHA by failing to reasonably accommodate the plaintiff's disability. The plaintiff handed Ms. Hunter a doctor's note authorizing the use of a companion animal to assist with a medical condition that substantially limits one or more of her major life activities. Thus she has shown that she informed the defendants of the her claimed handicap and her request for

accommodation such that defendants were aware or should have been aware of her handicap and her request. Ms. Hunter demonstrated that she was aware of the handicap and the request for accommodation when she wrote "Denial Due to Svc Dog – Dr. Miller" at the top of the plaintiff's rental application and when she checked the box identifying "undisclosed or unpermitted pet" on the application denial form.

The defendants may have believed that the plaintiff was not truly disabled or that her request for accommodation was unreasonable. However, under the FHA they were required to engage in an interactive process to determine whether or not that was the case. Instead, they immediately denied her application to rent, and effectively denied her request for reasonable accommodation. While they may have preferred that the plaintiff make her request on the rental application, the FHA does not allow housing providers to deny requests for that reason.

## B. Relief under the Fair Housing Act

If a court finds that a discriminatory housing practice has occurred, the court may award to the plaintiff actual and punitive damages, and subject to certain exceptions, may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate. 42 U.S.C. § 3613(c)(1). In addition, the court, in its discretion, may allow the prevailing party a reasonable attorney's fees and costs. 42 U.S.C. § 3613(c)(2).

The plaintiff requests that the court grant relief in the sum of $12,000 based on her pain and suffering, which includes severe emotional distress. At trial, the plaintiff testified that she suffers from severe anxiety on a normal day, and that the experience with the Hunters exacerbated this anxiety to an extreme degree. It made her feel "like a failure, worthless, like she

doesn't matter." The stress of being denied housing due to her companion animal, which was the one thing that could help calm her down, affected all aspects of her life, including her school work. Her daily function was "down to pretty much nothing." In addition, the neighborhood in which she had been living had a high incidence of drugs and violence, and the plaintiff did not feel safe there. It took her at least two months to find suitable alternative housing.

Non-economic damages are always difficult for the court to determine definitively. The plaintiff did not request punitive damages or injunctive relief, although the statute allows for such relief. The statute places no limit on the amount of damages, however, and the court can find no reason to discount the relief requested, which is reasonable.

## CONCLUSION

Ms. Book established by a preponderance of the evidence that defendants unlawfully discriminated against her in violation of the Fair Housing Act. The defendants did not establish an affirmative defense. Therefore, the court finds in favor of plaintiff Tina Book and against the defendants Judy Hunter, Randall Hunter, and Hunter Crest Properties, LLC, and awards plaintiff Book $12,000 in damages. Plaintiff is also entitled to recover her reasonable attorney's fees and costs.

DATED this ___2 / ___ day of March, 2013.

MARK D. CLARKE
United States Magistrate Judge